IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RIO GRANDE FOUNDATION and
ILLINOIS OPPORTUNITY
PROJECT,

       Plaintiffs,

v.                                                                                    No. Civ. 1:19-cv-01174-JCH-JFR

MAGGIE TOULOUSE OLIVER, in her
official capacity as Secretary of State
of New Mexico,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are cross motions for summary judgment filed by the parties. On July 26, 2021, Plaintiffs Rio Grande Foundation ("RGF") and Illinois Opportunity Project ("IOP") (collectively, "Plaintiffs") filed a *Motion for Summary Judgment and Memorandum of Law in Support Thereof* (ECF No. 52) and, ten days later, an *Amended Motion for Summary Judgment and Memorandum of Law in Support Thereof* (ECF No. 53). Defendant Secretary of State Maggie Toulouse Oliver ("Defendant" or "the Secretary") filed a *Response to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment* (ECF No. 56).[1] Plaintiffs mount a facial challenge to New Mexico Senate Bill 3 ("SB 3") and seek summary judgment against the

---

[1] Plaintiffs filed their amended motion for summary judgment without explanation. Defendant's response brief says in its title that it is a response to Plaintiffs' motion for summary judgment, rather than to the amended motion for summary judgment. However, a comparison of Plaintiffs' initial motion for summary judgment and their amended motion for summary judgment reveals that they are in large part identical, but the amended motion for summary judgment replaces a "Factual & Procedural Background" section with a "Proposed Statement of Material Facts" section that numbers the facts, as required by N.M. Local Rule of Civil Procedure 56.1(b). (*Compare* Pls.' Mot. 2-5, ECF No. 52, *with* Pls.'s Am. Mot. 2-5, ECF No. 53.) In Defendant's response, the Secretary responds to the enumerated facts, so it is apparent that the response is to Plaintiffs' amended motion for summary judgment. (*See* Def.'s Resp. 9-12, ECF No. 56.) The Court finds that Plaintiffs' *Amended Motion for Summary Judgment and Memorandum of Law in Support Thereof* (ECF No. 53) replaces and supersedes their *Motion for Summary Judgment and Memorandum of Law in Support Thereof* (ECF No. 52), and thus the Court will deny Plaintiffs' original motion for summary judgment as moot.

Secretary to prevent her from applying SB 3 to require organizations to disclose their members and supporters and to disclose their sponsorship of issue advocacy. Defendant seeks summary judgment as well, arguing that Plaintiffs lack standing and that their facial challenge fails on the merits. The Court, having considered the motions, briefs, evidence, and applicable law, concludes that Defendant's cross-motion for summary judgment should be granted based on lack of standing and the case dismissed. Accordingly, Plaintiff's amended motion for summary judgment should be denied.

## I.   INTRODUCTION

Effective July 1, 2019, Senate Bill 3 ("SB 3") became law, requiring groups that make independent expenditures to register with the secretary of state as political committees if the group has received more than $5,000 in contributions or made independent expenditures of more than $5,000 in the election cycle. *See* N.M. Stat. Ann. § 1-19-26(Q)(4), § 1-19-26.1(C); 2019 New Mexico Laws Ch. 262 (S.B. 3), Sec. 1, 3, and 18. SB 3 expanded the definition of "independent expenditure" to include an expenditure "made to pay for an advertisement that … refers to a clearly identified candidate or ballot question and is published and disseminated to the relevant electorate in New Mexico within thirty days before the primary election or sixty days before the general election at which the candidate or ballot question is on the ballot." N.M. Stat. Ann. § 1-19-26(N)(3)(c).

SB 3 also added a new section of the Campaign Reporting Act ("CRA") about reporting requirements. *See id.* § 1-19-27.3(A); 2019 New Mexico Laws Ch. 262 (S.B. 3), Sec. 1(A). A person making an independent expenditure must file a report with the secretary of state within three days of making it, if the expenditure "by itself or aggregated with all independent expenditures made by the same person during the election cycle, exceeds" $1,000 in a non-

statewide election or $3,000 in a statewide election. N.M. Stat. Ann. § 1-19-27.3(A)(1). A person who makes independent expenditures of $3,000 or less in a non-statewide election or $9,000 or less in a statewide election must report the name and address of each person who has made contributions of more than $200 in the election cycle "that were earmarked or made in response to a solicitation to fund independent expenditures" and must report the amounts of each contribution. *Id.* § 1-19-27.3(C). A person who makes independent expenditures of more than $9,000 in a statewide election or more than $3,000 in a non-statewide election "exclusively from a segregated bank account consisting only of funds contributed to the account by individuals to be used for making independent expenditures" must report the name, address, and amount of each contribution made by each contributor who gave more than $200 to the segregated bank account in the election cycle. *Id.* § 1-19-27.3(D)(1). If the expenditures were made from a general fund, a person who makes independent expenditures of more than $9,000 in a statewide election or more than $3,000 in a non-statewide election must report the name, address, and amount of each contribution made by each contributor who gave more than $5,000 to the person during an election cycle. *See id.* § 1-19-27.3(D)(2). For contributors of more than $5,000 to a general fund, the disclosure rules do not apply "if the contributor requested in writing that the contribution not be used to fund independent or coordinated expenditures or to make contributions to a candidate, campaign committee or political committee." *Id.* The disclosures are searchable on the Secretary of State's website by the public. *See* Secretary of State, Independent Expenditure, https://portal.sos.state.nm.us/IESearch/(X(1)S(jg5ecuqhn4emlueb0kzprn0z))/Search.aspx?Aspx AutoDetectCookieSupport=1 (last visited Dec. 7, 2021); N.M. Stat. Ann. § 1-19-32(C).

Further, SB 3 added another new section to the CRA regarding disclaimers in advertisements. *See* 2019 New Mexico Laws Ch. 262 (S.B. 3), Sec. 2. A person making an

independent expenditure for an advertisement exceeding $1,000 must include in the advertisement "the name of the candidate, committee, or other person who authorized and paid for the advertisement." N.M. Stat. Ann. § 1-19-26.4. The Act provides for certain exceptions to the disclaimer rule for "bumper stickers, pins, buttons, pens and similar small items upon which the disclaimer cannot be conveniently printed; or skywriting, water towers, wearing apparel or other means of displaying an advertisement of such a nature that the inclusion of a disclaimer would be impracticable." *Id.* § 1-19-26.4(B)(1)-(2).

A person who violates the CRA may be punished by a fine of not more than $1,000 or by imprisonment for not more than a year or both. N.M. Stat. Ann. § 1-19-36(A). The state ethics commission may also institute an action for relief for violations of the CRA, including a civil penalty of up to $1,000 for each violation not to exceed a total of $20,000. *Id.* § 1-19-34.6(B).

## II.    FACTUAL BACKGROUND

Rio Grande Foundation is an established 501(c)(3) charitable and educational organization based in New Mexico that has been speaking out in state and local matters since 2000. (Pl.'s Am. Mot. for Summ. J., Undisputed Fact (hereinafter "Pl.'s UF") ¶ 1, ECF No. 53; Def.'s Resp., Undisputed Fact (hereinafter "Def.'s UF") ¶ P, ECF No. 56.) As a research institute, RGF is dedicated to increasing liberty and prosperity for all New Mexico's citizens by informing New Mexicans of the importance of individual freedom, limited government, and economic opportunity. (Pl.'s UF ¶ 1, ECF No. 53.) RGF engages in issue advocacy in New Mexico on topics central to its mission and publishes on its website the "Freedom Index," a real-time vote scorecard tracking legislators' positions on free-market issues and their floor votes on bills that are important to RGF. (Pl.'s UF ¶¶ 1, 13, ECF No. 53; Def.'s UF ¶ F, ECF No. 56.)

4

IOP is a 501(c)(4) social-welfare organization based in Illinois that seeks to promote the social good and common welfare by educating the public about policy that is driven by the principles of liberty and free enterprise. (Pl.'s UF ¶ 2, ECF No. 53.) IOP was founded in 2010 and has a budget of approximately $3.5 million. (Def.'s UF ¶ P, ECF No. 56.) A policy of great concern to IOP is member-disclosure laws. (Pl.'s UF ¶ 2, ECF No. 53.) IOP engages in issue advocacy in Illinois, but its only past advocacy outside of Illinois has been as plaintiffs in other lawsuits. (*See* Pl.'s UF ¶ 12, ECF No. 53; Def.'s UF ¶ H, ECF No. 56.)

Both IOP and RGF receive general-fund support from a variety of sources, including from multiple donors over $5,000. (Pl.'s UF ¶ 15, ECF No. 53.) Some donors give over $5,000 in a single election contribution, and others may give over $5,000 total in a two-year cycle. (*Id.*)

IOP planned to send mailings within 60 days of the November 2020 general election in New Mexico to thousands of New Mexico voters that would have mentioned the referendum on amending the New Mexico Constitution to end elections for the New Mexico Public Regulation Commission. (*See* Besler Decl. ¶ 6, ECF No. 33-1.) IOP, however, did not send the mailers after filing this lawsuit because it did not want its donors disclosed. (Besler Dep. 35:4-9, ECF No. 56-2.) IOP's President could not recall how much money it would have spent on the mailers, but thought it was going to be more than $9,000. (*Id.* at 35:21-36:2.)

RGF planned to send mailings within 60 days of the November 2020 general election that would mention the name of the incumbent legislator and their votes and score on the Freedom Index, spending over $3,000 in individual legislative districts. (Gessing Decl. ¶ 5, ECF No. 33-2.) RGF, however, did not send its proposed postcards with Freedom Index results. (Def.'s UF ¶ I, ECF No. 56.) Instead, RGF sent a taxpayer pledge card, stating whether certain candidates signed a "Taxpayer Protection Pledge" that demanded no tax hikes through the end of the 2021 New

Mexico legislative session. (*See id.*; Defs.' Ex. 3, ECF No. 56-3.) RGF, however, doesn't "have the capacity or the financial, you know, wherewithal to do this for all legislators." (Gessing Dep. 57:25-58:10, ECF No. 56-1.)

Plaintiffs fear that if their supporters or donors are disclosed, they may be subject to retaliation and harassment by officials or intolerant members of society. (Bessler Decl. ¶¶ 10-11, ECF No. 33-1; Gessing Decl. ¶¶ 9-10, ECF No. 33-2.) RGF, IOP, and their presidents all have public Twitter accounts where they make political statements, and RGF's website lists its staff, including information about their families and where they live. (Def.'s UF ¶ Q, ECF No. 56.) IOP's website contains names and pictures of its president, vice president, and co-founder. (*Id.*) RGF and IOP, however, are not aware of any past harassment or retaliation against their employees or donors. (Def.'s UF ¶ R, ECF No. 56.) Although RGF's president stated in his declaration that he was aware of at least one past instance where persons in New Mexico were threatened with or experienced retaliation, at his deposition, he could not recall any details regarding the event. (*Id.*) In April 2021, he testified that "New Mexico is a little bit unique" because of its constitutional amendment process and that it does not have as many volatile issues that attract harassment. (Def.'s UF ¶ S, ECF No. 56; Gessing Dep., ECF No. 56-1.) At the time of his deposition, Mr. Gessing said RGF did not have any plans to make expenditures on issues like labor, the Second Amendment, the environment, or energy, but that things can change quickly. (Gessing Dep. 84:13-18, ECF No. 56-1.)

Plaintiffs fear that if their members, supporters, and donors are disclosed, they may stop contributing to Plaintiffs out of fear of retaliation and harassment by intolerant members of society. (Pl.'s UF ¶ 19, ECF No. 53.) Although donors have told RGF and IOP that they fear the disclosure of their identities, donors have not stated that they would not donate if their information were made

public. (Def.'s UF ¶ T, ECF No. 56.) Based on Mr. Gessing's fundraising experience, however, he believes that donors will be less likely to contribute to its mission if their identities are disclosed. (Gessing Decl. ¶ 11, ECF No. 33-2.) Some people have told Mr. Gessing that they can't donate to RGF because of a fear the donation will be made public. (Gessing Dep. 69:10-16, ECF No. 56-1.)

Plaintiffs filed suit against the Secretary, asserting that, by requiring them to disclose their financial supporters and identify themselves in the mailings they intended to make shortly before the November 3, 2020 general election, Defendant violated their First and Fourteenth Amendment rights. (*See* Am. Compl. ¶¶ 26-27, 37-44, ECF No. 13.) Plaintiffs assert that they are entitled to an injunction enjoining the enforcement of the disclosure provisions in SB 3 (Count I) and of the registration and disclaimer provisions in SB 3 (Count II). (*See id.* ¶¶ 37-44.)[2] Plaintiffs moved the Court for a preliminary injunction on August 25, 2020. (*See* Pls.' Mot. for Preliminary Injunction, ECF No. 33.) For purposes of that motion, Plaintiffs only made an as-applied challenge to SB 3, seeking an order protecting their specific organizations. (*Id.* at 6-7.) This Court denied Plaintiff's motion for preliminary injunction. (Mem. Op. and Order 1, ECF No. 38.)

Subsequently, the parties filed cross-motions for summary judgment. Plaintiffs seek summary judgment against Defendant to prevent her from applying policies under SB 3 that require organizations to disclose their donors and to disclose their sponsorship of issue advocacy. (*See* Pl.'s Am. Mot. for Summ. J. 1, ECF No. 53 at 3 of 30.) In contrast to the motion for preliminary injunction, Plaintiffs seek only facial relief. (*Id.* at 6.) Defendant opposes the motion and seeks summary judgment in her favor, asking the Court to uphold SB 3 as facially constitutional. (*See* Def.'s Resp. to Pl.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. (hereinafter "Def.'s Cross Mot." or "Def.'s Resp.") 2, ECF No. 56 at 4 of 39.) Before turning to

---

[2] Plaintiffs previously voluntarily dismissed Count III of the Amended Complaint. (*See* Stipulation to Voluntarily Dismiss Count III, ECF No. 22.)

the merits of the parties' arguments, this Court has a jurisdictional obligation to determine first whether it has standing to decide the substantive issues.

### III.   STANDARD

On a motion for summary judgment, the moving party initially bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995).  Only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See id.* at 248.

Cross-motions for summary judgment must be treated separately, and the denial of one does not require the grant of the other. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir.1979)). When considering cross-motions for summary judgment, a court may assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is inappropriate if material factual disputes nevertheless exist. *Id.*

### IV.   STANDING ANALYSIS

Defendant asserts that Plaintiffs have not shown a sufficiently concrete and particularized imminent injury to establish standing to challenge SB 3. Plaintiffs respond they have standing to bring this "facial, pre-enforcement challenge because their speech was chilled prior to the 2020 election due to the State's disclaimer and disclosure laws, and in a pre-enforcement action under the First Amendment no further injury is necessary before commencing a lawsuit." (Pls.' Reply 8, ECF No. 57.)

For a federal court to exercise its Article III jurisdiction over "cases" and "controversies," plaintiffs must allege and prove that (1) they suffered an "injury in fact;" (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is redressable by a favorable decision. *Initiative and Referendum Institute v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). An "injury in fact" means "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan*, 504 U.S. at 560). While a plaintiff does not need to expose himself to prosecution to challenge a statute that infringes on his constitutional rights, allegations of possible future injury are not enough to meet the "injury in fact" requirement. *Id.* at 1087-88. "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotations omitted).

In First Amendment cases, a plaintiff may establish standing where there is a chilling effect on the exercise of its rights so long as the plaintiff has "an objectively justified fear of real consequences." *Walker*, 450 F.3d at 1088 (quoting *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir.2004)). A subjective chill is not enough to convey standing; the plaintiff must allege "specific present objective harm or a threat of specific future harm." *Id.* (quoting *Laird v. Tatum*, 408 U.S.

1, 13–14 (1972)). The Tenth Circuit set out a three-factor "relatively relaxed test" for assisting courts in determining whether a plaintiff has standing in "chilled speech claims seeking prospective relief:" (1) whether plaintiffs submitted evidence that they engaged in this type of speech in the past; (2) affidavits or testimony stating a present desire to engage in such speech; and (3) a plausible claim that they presently have no intention to engage in such speech because of a credible threat that the statute will be enforced against them. *Rio Grande Foundation v. City of Santa Fe*, 7 F.4th 956, 959 (10th Cir. 2021) (quoting *Walker*, 450 F.3d at 1089). Where a plaintiff satisfies these three criteria, the plaintiff will have shown standing despite a lack of evidence of specific plans to engage in speech affected by the challenged governmental action. *Walker*, 450 F.3d at 1089.

At the time of his deposition, Mr. Gessing testified that the only future mailings that RGF was possibly considering concerned a federal congressional election that was outside the scope of this lawsuit. (Def.'s UF ¶ M, ECF No. 56.) The President of the IOP testified that IOP has no immediate plans to engage in issue advocacy in New Mexico and he is unsure what policies in New Mexico IOP may want to speak about in the future. (Besler Dep. 37:2-21, 45:7-20, ECF No. 56-2.) Plaintiffs are seeking prospective injunctive relief, but they have not submitted evidence of specific future plans to engage in speech affected by SB 3. Instead, Plaintiffs rely on the factors set forth in *Walker*, asserting that they have satisfied the injury requirements because their speech was chilled prior to the 2020 election due to the challenged provisions in SB 3. The Court will thus turn to the three *Walker* factors.

### 1. Plaintiffs did not submit evidence that they in the past engaged in speech affected by SB 3

Plaintiffs admit that "they have not engaged in electioneering communications subject to disclosure in 2020." (Pl.'s Reply 9, ECF No. 57.) Although IOP engages in issue advocacy in

Illinois (Besler Decl. ¶ 3, ECF No. 33-1), IOP's only past advocacy outside of Illinois has been as plaintiffs in other lawsuits. (Def.'s UF ¶ H, ECF No. 56.) IOP has not sent any mailers or other advertisements in New Mexico that would have been subject to the challenged laws. (Def.'s UF ¶ G, ECF No. 56.) IOP is not currently spending any money on issue advocacy or social media outside of Illinois. (Besler Dep. 28:22-29:18, ECF No. 56-2.)

RGF's pre-2020 advertisements were small enough that they would not have triggered the requirement to report contributors under SB 3 had it been enacted previously. (Def.'s UF ¶ E, ECF No. 56.) RGF only published its Freedom Index online, the expenditures for which have not required RGF to make disclosures or disclaimers under SB 3. (Gessing Dep. 38:10-40:9, ECF No. 56-1.) Although RGF considered sending a postcard with Freedom Index results, its president testified "that's something actually we really haven't done much of so far." (*Id.* at 38:12-19; Def.'s UF ¶ F, ECF No. 56.) Additionally, RGF sent postcards and social media messages in the month before the 2020 general election that approved or disapproved of certain legislative candidates for agreeing to a "taxpayer pledge." (*See* Gessing Dep. 53:20-54:8, ECF No. 56-1.)

Plaintiffs argue, however, that they have engaged in similar activities in the past: RGF has done numerous mailings in New Mexico, and IOP has done mailings in Illinois and plans to do them in New Mexico. IOP, however, has not done any mailings in New Mexico in the past. Most of RGF's past mailings were smaller than what would have subject them to SB 3's requirements. The one possible exception is that RGF sent a taxpayer pledge postcard before the 2020 general election, but Plaintiffs contend that "they have not engaged in electioneering communications subject to disclosure in 2020." (Pl.'s Reply 9, ECF No. 57.) Therefore, Plaintiffs have not submitted evidence that they engaged in the type of speech subject to SB 3's requirements in the past.

As the Tenth Circuit explained, evidence of past activities cannot be an indispensable element because people have a right to speak for the first time. *Walker*, 450 F.3d at 1089. The Tenth Circuit nonetheless noted that such evidence of past activities "lends concreteness and specificity to the plaintiffs' claims, and avoids the danger that Article III requirements be reduced to the formality of mouthing the right words." *Id.* IOP and RGF are not new organizations and have been speaking out on policy matters for years. The lack of evidence of past activities that would subject them to SB 3 suggests that neither organization is likely to suffer actual injury from the dictates of SB 3. This factor thus weighs against finding that IOP and RGF have standing to challenge SB 3.

### 2. Plaintiffs submitted affidavits or testimony stating a present desire to engage in such speech generally

IOP looks at policy across the country and intends to educate individuals when it seeks policies that align with its mission. (Besler Dep. 37:2-21, ECF No. 56-2.) IOP's president generally averred that IOP "intends to engage in substantially similar issue speech in future New Mexico elections." (Besler Decl. ¶ 7, ECF No. 33-1.) Right now, however, the only policies in New Mexico that IOP has identified as being interested in speaking about is the referenda at issue in this lawsuit. (*See* Besler Dep. 37:22-38:2, ECF No. 56-2.) The constitutional amendment regarding the PRC, however, has already been voted upon. (Def.'s UF ¶ N, ECF No. 56.) RGF's president likewise averred in a declaration that "RGF intends to engage in substantially similar issue speech in future New Mexico elections." (Gessing Decl. ¶ 6, ECF No. 33-2.) This evidence satisfies the second factor in the test for standing. *Cf. Rio Grande Foundation v. City of Santa Fe*, 7 F.4th 956, 960 (10th Cir. 2021) ("Plaintiff has expressed, via an affidavit from its president, a desire to continue speaking about municipal ballot measures in the future. Nothing more concrete than this general aspiration is needed to meet the second prong.").

**3. Plaintiffs have not submitted sufficient evidence of a *plausible* claim that they presently have no intention to engage in such speech *because of* a credible threat that the statute will be enforced against them**

The "question posed by the third prong is not whether someone standing in the plaintiff's shoes would be deterred from speaking, but rather whether the plaintiff in question claims to be deterred and whether such deterrence is plausible." *Rio Grande Foundation*, 7 F.4th at 960. Plaintiffs contend that they suffered the chilling effect created by SB 3 because neither RGF nor IOP sent its contemplated postcards and mailers, respectively, before the 2020 election. IOP did not send the mailers identified in the complaint regarding the PRC constitutional amendment. (Def.'s UF ¶ J, ECF No. 56.) IOP also did not send a smaller number of mailers that would have been under the threshold for disclosure. (Besler Dep. 46:2-6, ECF No. 56-2.) RGF similarly did not send its proposed postcards with Freedom Index results. (Def.'s UF ¶ I, ECF No. 56.) Plaintiffs therefore claim to have been deterred from speaking, but the issue here is whether the alleged deterrence is plausible, in other words, whether there is an objective basis that renders the alleged chilling effect on Plaintiffs plausible. *See Rio Grande Foundation*, 7 F.4th at 960.

Defendant argues that Plaintiffs have not shown evidence that they did not carry through with the proposed mailers *because of* SB 3. Turning first to the disclaimer provisions of SB 3, the Court agrees that Plaintiffs failed to submit evidence that SB 3's disclaimer provisions chilled their speech and stopped them from speaking. The record shows that RGF's and IOP's past mailers and advertisements stated thereon that they were being sent from either RGF or IOP. (Def.'s UF ¶ O, ECF No. 56.) RGF identified itself as the sender on the taxpayer pledge mailers. (Gessing Dep. 58:15-17, ECF No. 56-1.) Every advertisement that RGF has done has always identified Rio Grande Foundation. (*Id.* at 93:8-18.) As Mr. Gessing explained, he spent 15 years building the RGF, and if the organization is going to spend money on something, it is going to put its name on it. (*Id.*) IOP identifies itself on its own mailers that it has sent in Illinois as coming from IOP

because it is best practice and required by the Illinois State Board of Elections. (*See* Besler Dep. 29:21-30:15, ECF No. 56-2.) Plaintiffs have therefore not met their burden of submitting evidence that they did not and will not engage in speech because of SB 3's disclaimer provision. The balance of the *Walker* factors therefore weighs against finding standing for Plaintiffs to challenge the disclaimer provisions in SB 3.

As for the disclosure provisions, Plaintiffs argue that they have consistently asserted that they will not engage in this advocacy because of the law, and that the best evidence of this factor is that the 2020 election came and went, and they did not undertake their planned advocacy. As evidentiary support, Plaintiffs cite the declarations of the presidents of their respective organizations. Mr. Gessing declared that RGF fears that disclosures of its members could result in retaliation or harassment against them, that disclosure may result in donors being less likely to contribute to RGF's mission, and that disclosures may shift the focus of its messages to who is paying for the message rather than the ideas themselves. (*See* Gessing Decl. ¶¶ 9-12, 18-22, ECF No. 33-2.) As for the IOP, Mr. Besler similarly averred that IOP fears that disclosures of its members could result in retaliation or harassment against them, that disclosure may result in donors being less likely to contribute to IOP's mission, and that disclosures may shift the focus of its messages to who is paying for the message rather than the ideas themselves. (*See* Besler Decl. ¶¶ 10-13, 17-20, ECF No. 33-1.) This evidence, however, does not establish that they will not speak in the future because of SB 3.

In their motion for summary judgment, Plaintiffs assert as a fact that "RGF and IOP have already forgone their plans to spread their views in advance of the November 3, 2020, general election because of SB 3's new requirements." (Pl.'s Am. Mot. for Summ. J. ¶ 16, ECF No. 53.) Plaintiffs, however, did not support the assertion in paragraph 16 with a citation to the record.

Although Defendant admitted for purposes of this motion that Plaintiffs did not take actions in 2020 that would have subjected them to the challenged requirements, except possibly for the "taxpayer" pledge postcards, Defendant disputed the assertion in paragraph 16 that they forewent plans to make independent expenditures because of SB 3 based on the lack of supporting evidence. (*See* Defs.' Cross Mot. ¶ 16, ECF No. 56 at 14 of 39.)

Defendant, however, did cite in the record to deposition testimony by IOP's president that IOP did not send its planned mailers before the 2020 election, and when asked why, he responded, "I think we filed a lawsuit because we don't want our donors to be disclosed." (Besler Dep. 35:4-9, ECF No. 56-2.) He could not recall, however, at what time he decided not to send the mailers or how much money would have been spent. (*See id.* at 35:10-36:2.) When asked how much IOP would have spent, he answered, "I think we said we were going to spend more than $9K, $9,000." (*Id.* at 35:21-24.) Consequently, there is some evidence in the record that IOP did not send mailers in 2020 because it did not want its donors disclosed.

Nevertheless, IOP must provide evidence of "a *plausible* claim that they presently have no intention to" speak "because of a credible threat that the statute will be enforced" against it. *Rio Grande Foundation*, 7 F.4th at 959 (italics added). Assertions of a subjective chill are not enough. *Id.* at 960. The lack of evidence of specific planned issue advocacy by IOP in New Mexico and the lack of evidence of issue advocacy by IOP in other states aside from participation in lawsuits undermines the plausibility standard in factor three. In balancing all three factors, the Court concludes that IOP has not shown injury that is sufficiently concrete and particularized to satisfy Article III standing.

As for RGF, Plaintiff did not meet its summary judgment burden of citing admissible evidence that it forewent its plans to spread its views in advance of the November 3, 2020 general

election because of SB 3's new requirements. Moreover, other evidence in the record undermines RGF's plausibility argument. As to the taxpayer pledge card, RGF doesn't "have the capacity or the financial, you know, wherewithal to do this for all legislators." (Gessing Dep. 57:25-58:10, ECF No. 56-1.) Mr. Gessing testified that RGF switched to sending the taxpayer pledge card, rather than the legislator scorecard, "for a variety of practical and logistical reasons." (*Id.* at 53:20-54:8.) He further stated that he did not know if RGF would do something like that again. (*Id.* at 57:2-5.) Examining the record in the light most favorable to Plaintiff, RGF has not met its evidentiary burden on summary judgment of establishing that it engaged and will not engage in future advocacy *because of* SB 3.

Plaintiffs argue that this case is distinguishable from another recent Tenth Circuit decision involving Rio Grande Foundation in which the Tenth Circuit concluded RGF had no standing. In *Rio Grande Foundation v. City of Santa Fe*, 7 F.4th 956 (2021), RGF challenged a city ordinance that enacted disclosure requirements for campaign spending after the Santa Fe Ethics and Campaign Review Board ("ECRB") cited RGF for failing to comply with the Campaign Code. *Id.* at 958. ECRB imposed no fines, but simply ordered RGF to file the required paperwork, which it did, ending the ECRB enforcement action against Plaintiff. *Id.* at 958-59. RGF sued the City and the ECRB seeking only prospective relief to declare the ordinance unconstitutional on its face and as applied to RGF. *Id.* at 959. Applying the *Walker* test, the Tenth Circuit concluded that there was no doubt that RGF satisfied the first two prongs where ECRB completed an enforcement action against RGF because of the ordinance and RGF's president stated in an affidavit his desire to continue speaking about municipal ballot measures in the future. *Id.* at 960. When examining the third prong of the *Walker* test, the Tenth Circuit determined that RGF failed to show evidence that it presently had no intention of speaking in future Santa Fe ballot measure elections, because RGF

averred the opposite – that it fully intended to continue speaking about municipal ballot measures in the future, but it did not want to choose between remaining silent or disclosing the names of its donors. *Id.*

While the prior *Rio Grande Foundation* case is different in that Plaintiff there averred that it intended to speak in the future, the Court concludes that the reasoning and outcome in *Rio Grande Foundation* compels the same result here. As in *Rio Grande Foundation*, Plaintiffs have failed to produce evidence of a plausible claim that they presently have no intention to engage in such speech because of a credible threat that the statute will be enforced against them. As the Tenth Circuit made clear, "the mere concern that speech will not occur does not amount to an affirmative claim that the speech really will not occur" because of the challenged law. *Id.* at 960. Additionally, unlike in *Rio Grande Foundation*, Plaintiffs have not met the first prong of the *Walker* test because they have not shown that they have engaged in speech in the past subject to SB 3. *Rio Grande Foundation* therefore supports this Court's determination that Plaintiffs did not establish standing in this case.

This case also differs from *Walker* in which the Tenth Circuit concluded the plaintiffs had standing. In *Walker*, "the Plaintiffs' affidavits consistently point to the existence of the supermajority requirement as the *reason* they presently have no specific plans to bring a wildlife initiative in Utah." *Walker*, 450 F.3d at 1092. The plaintiffs in *Walker* also met the first prong by showing their past conduct supporting wildlife initiatives. *Id.* at 1091. *Walker* is therefore distinguishable, and the factual differences between that case and this one reveal why Plaintiffs have failed to establish standing here. *Cf. Walker*, 450 F.3d at 1090-92 (concluding plaintiffs showed concrete injury in fact to challenge Utah constitutional amendment requiring a supermajority to pass wildlife initiatives where they presented evidence of past efforts to bring

wildlife initiatives before voters in other states and to commission public opinion survey of Utah voters, they alleged a present desire to use the initiative process to advance their wildlife objectives, and they provided affidavits attesting they were discouraged from making specific plans to introduce initiatives in future because of supermajority requirement).[3]

"The purpose of the injury-in-fact requirement of Article III is to ensure only those having a direct stake in the outcome, and not those having abstract concerns, may have access to the courts." *Committee to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 451 (10th Cir. 1996) (internal quotations omitted). The record here, construed in Plaintiffs' favor, does not show the requisite concrete and particularized injury, rather than abstract concerns, caused by SB 3. Plaintiffs' failure to satisfy its summary judgment burden to submit evidence of actual or threatened, non-speculative injury requires this Court to dismiss Plaintiffs' case for lack of Article III standing.

**IT IS THEREFORE ORDERED** that

1. Plaintiffs' *Motion for Summary Judgment and Memorandum of Law in Support Thereof* (**ECF No. 52**) is **DENIED** as **MOOT**.

2. Plaintiffs' *Amended Motion for Summary Judgment and Memorandum of Law in Support Thereof* (**ECF No. 53**) is **DENIED** for lack of standing.

3. Defendant's *Response to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment* (**ECF No. 56**) is **GRANTED** based on Plaintiffs' lack of standing.

---

[3] The case of *First National Bank of Boston v. Bellotti*, upon which Plaintiffs also rely, does not compel a different result. In *Belotti*, the Supreme Court noted that controversies capable of repetition, yet evading review, are not moot where the challenged action was too short to be fully litigated prior to its end and there is a reasonable expectation that the same complaining party will be subject to the same action again. 435 U.S. 765, 774 (1978). Here, Plaintiffs have not shown a *reasonable* expectation that they will be subject to SB 3 in the future.

4.  The claims remaining in this case are **DISMISSED** based on Plaintiff's lack of Article

III standing.


_____
SENIOR UNITED STATES DISTRICT JUDGE